### SAMUEL E. NELSON *vs.* FREDERICK G. KATZMANN & another.

Suffolk.    October 19, 1922. — December 2, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Landlord and Tenant,* Validity of lease, Ratification.  *Guardian.    Agency,* Existence of relation, Ratification of act of one purporting to act as agent.  *Joint Tenants and Tenants in Common.    Receiver.    Probate Court,* Receiver.

In a suit in equity to establish alleged rights of the plaintiff as lessee of certain real estate and to enjoin interference with the leasehold, it appeared that a parcel of real estate including the alleged leasehold at the time of the alleged lease was owned by a woman and by an insane man who was under temporary guardianship; that the person named as lessor in the alleged lease was the husband of the woman, whose name in the body of the lease was followed merely by the word "trustee," and that he signed the lease merely with his own name without adding the word "trustee;" that about five months after the date of the lease the temporary guardian of the insane co-owner under license of court sold his undivided interest to the defendant; that nine months later the insane co-owner died; that in the following year upon petition by the purchaser of the interest of the insane co-owner, the real estate was partitioned and the portion including the alleged leasehold was set off to him.  The record showed that, a few days later, a receiver of the property was appointed by the Probate Court but it did not disclose the ground of the appointment nor the time of the decree appointing him.  After his appointment, the lessee paid rent to him.  The lessor named in the lease testified that he had collected rents from the tenant before the lease and after it with the consent of the temporary guardian.  This evidence was controverted.  The judge found that the designated lessor had no authority to execute the lease in behalf of the insane co-owner and that there was no ratification of the lease by the guardian binding upon him or his estate.  The suit was dismissed.  *Held,* that

(1) The temporary guardian had no authority to empower an agent to execute a lease of his ward's interest in the real estate nor to ratify such a lease after it was made;

(2) Even if the lease was good as against the co-owner with the insane person, it ceased to have any validity after her undivided interest was divested by the decree of partition;

(3) On the record it did not appear that the receiver had any authority to take possession of the property or to collect rents and it could not be found that by so doing he ratified the lease;

(4) The suit rightly was dismissed.

BILL IN EQUITY, filed in the Superior Court on November 4, 1921, against Frederick G. Katzmann and Charles H. Wentworth, seeking to have established alleged rights of the plaintiff as lessee of certain premises numbered 1647 Blue Hill Avenue in Boston and to have the defendants enjoined from interfering therewith.

In the Superior Court, the suit was heard by *Hammond*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence.

It appeared that, in the lease relied on by the plaintiff, the lessor was described merely as "James H. Hayes, Trustee," and that he signed merely "James H. Hayes." Other material evidence is described in the opinion. The judge found "that James H. Hayes had no authority to execute the lease . . . in behalf of Michael J. Brosnan, who was adjudged an insane person in October, 1917, and that there was no ratification of the lease by his guardian binding upon him or his estate;" and by his order a final decree was entered dismissing the bill. The plaintiff appealed.

The case was submitted on briefs.

*A. L. Richards*, for the plaintiff.

*S. E. Duffin & D. W. Murray*, for the defendants.

JENNEY, J. The plaintiff brings this suit to establish his rights as lessee of real estate.

In 1914, Michael J. Brosnan and Annie T. Hayes, as tenants in common, became owners of land with buildings thereon on Blue Hill Avenue in Boston. On October 17, 1917, Brosnan, who was insane, was placed under the temporary guardianship of John J. Conway, whose guardianship continued until Brosnan's death shortly before December 1, 1920. R. L. c. 145, §§ 6, 20, 21. St. 1909, c. 504, § 107. St. 1911, c. 206. G. L. c. 201, §§ 1, 6, 14, 15.

On October 31, 1919, James H. Hayes, husband of Annie T. Hayes, purporting to act as "Trustee," gave the plaintiff a lease of a part of the premises for the term of five years. The plaintiff, who already was in possession, has paid the rent reserved to

James H. Hayes to June, 1921, and since that time to the defendant Frederick G. Katzmann, and has complied with the terms of the lease.

Hayes, prior to the appointment of Conway as guardian, had collected the rents and looked after the repairs. He testified that Conway told him to continue so to do and authorized him to make the lease in question; but Conway denied giving any authority to make it or knowledge of its existence until March, 1920. The judge found that Hayes was not authorized to execute the instrument in behalf of Brosnan. Apart from R. L. c. 146, § 29 (see now G. L. c. 202, § 31), under which a guardian may be licensed to execute a written lease, if the right exists to lease, it is only for a term not extending beyond the continuance of the disability or lifetime of the ward, and probably is also limited to the period of his guardianship. *Hicks* v. *Chapman,* 10 Allen, 463. *Mansur* v. *Pratt,* 101 Mass. 60. *Willwerth* v. *Leonard,* 156 Mass. 277, 279. See Tiffany, Land. & Ten. 218. Clearly the guardian, if he could execute a valid lease without any decree of the Probate Court, had no right to do so through an agent. See *Murray* v. *Postal Telegraph-Cable Co.* 210 Mass. 188, 194; *Smith* v. *Abbott,* 221 Mass. 326, 330. While as guardian he was not strictly an agent, because he derived his authority wholly from the law (*Hicks* v. *Chapman, supra*), his position in this respect was analogous to that of an agent or attorney. *Granby* v. *Amherst,* 7 Mass. 1, 6. *Manson* v. *Felton,* 13 Pick. 206, 211. *Lombard* v. *Morse,* 155 Mass. 136. The finding that the guardian did not ratify the lease, assuming that he could have done so, was amply justified by the evidence.

On March 24, 1920, the undivided interest of Brosnan was conveyed by the guardian under license of the Probate Court to the defendant Charles H. Wentworth, who, on or about May 1 of that year, petitioned the court for a partition of the property, and on September 21, 1921, the part of the premises including the claimed leasehold was duly set off to the defendant, and thus became his absolute property. Even if the lease was good as against the interest of Annie T. Hayes, it ceased to have any validity when her undivided ownership was divested by the partition. *Tainter* v. *Cole,* 120 Mass. 162. *Barnes* v. *Boardman,* 157 Mass. 479.

Katzmann's sole connection with the case was as receiver of

the property, appointed on May 5, 1921, by the Probate Court. The record does not disclose the ground of the appointment nor the terms of the decree under which the receiver acted. The Probate Court, which had jurisdiction under St. 1917, c. 279, § 26 (see now G. L. c. 241, § 25), appointed the receiver to take possession of the property and to collect its rents and profits. As it does not appear that the receiver was permitted or directed to make a lease by the express terms of his appointment, by other decree of the court, or by necessary implication, on this record no such authority existed. *Weeks* v. *Weeks,* 106 N. Y. 626. *Chicago Deposit Vault Co.* v. *McNulta,* 153 U. S. 554. Like considerations negative the right to ratify an existing lease. See *Bell* v. *American Protective League,* 163 Mass. 558. The powers of the receiver must be considered as limited to safeguarding and preserving the property and the rents and profits therefrom.

As the plaintiff was not entitled to possession under the lease, the decree dismissing the bill was entered rightly, and is affirmed with costs of this appeal.

*So ordered.*