SAMUEL E. NELSON vs. CHARLES H. WENTWORTH & another.

Suffolk.    March 19, 1923. — April 11, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, & CARROLL, JJ.

*Landlord and Tenant*, Ratification of unauthorized lease.    *Agency*, Ratification of act of agent.    *Estoppel.*

One, who purchases from the guardian of an insane person under license of the Probate Court the ward's title as tenant in common of certain real estate which is occupied by a tenant, who claims to be a lessee under a lease in writing from an alleged agent of the insane person but whose alleged lease the guardian has repudiated, stands in a position as to the alleged lease as secure as that of his grantor and, where he continuously has asserted his rights as against such tenant, he cannot as a matter of law be held to have ratified the lease nor to be estopped to deny it merely from the fact that, before his purchase, he had treated with the alleged lessee with a view to buying him out, nor from the further fact that, after his purchase, he accepted from the alleged agent funds of the agent on an accounting which included many items for disbursements and receipts for rent from various tenants, among others rent from the tenant in question.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 25, 1922, to enjoin the defendants from interfering with the plaintiff, who alleged that he was a tenant of property owned by the defendant by virtue of a lease in writing from an alleged agent of a predecessor in title of the defendant.

The suit was referred to a master. From the master's findings in a report filed on December 16, 1922, it appeared that the lease of the plaintiff was signed by one James H. Hayes, who assumed to act as agent for his wife and for one Brosnan, an insane person, who were owners in common of real estate including that described in the alleged lease; that the guardian of Brosnan never ratified, but disaffirmed and refused to recognize the lease; that the defendant Wentworth lived in Milton, was a retail druggist, and had a place of business in Mattapan near the store of the plaintiff up to about January 30, 1920, at which time his store was burned; that he "desired to secure another place of business near the same place and went to the plaintiff to inquire if he would sell out, but the plaintiff did not want to. At a later time he again went to the plaintiff and asked him if he had a lease and if he would sell, and was told by the plaintiff that he did have a lease and that he would

sell for a price, but they were unable to agree on terms, and the defendant Wentworth inquired about the property from another real estate agent located in that same neighborhood, and in consequence he learned who the owners were and started to make inquiries looking to purchase the property for the purpose of securing a location for his business; . . . that on March 20, 1920, the defendant Wentworth talked with Hayes on the telephone about the occupancy of the plaintiff and about getting a lease of a store, and he was told by Hayes that he could under no circumstances become a tenant in said property, that there were leases, and that he would never allow him to put a drug store in said building; that before he would permit Wentworth to have a drug store there he would put one in himself; that he would keep said Wentworth in endless litigation if he attempted to do so."

Subsequently the guardian of Brosnan conveyed under license of the Probate Court to the defendant Wentworth, who, in partition proceedings, was awarded the real estate in question on September 21, 1921. The master reported in detail acts of the defendant Wentworth in attempting to put the plaintiff out of possession, and of the plaintiff in forcibly retaining possession, and concluded that the defendant refused "to accept rent from the plaintiff when tendered to him by the plaintiff, but did take certain rents from James H. Hayes after an accounting of some sort; . . . that the money collected by James H. Hayes as rent from said property was from nine tenants, including the plaintiff; that the money so collected was deposited by Hayes in his personal account; that the account made by the said Hayes showed the rents so collected, also all disbursements made in the management of the estate, and the payment to the said Wentworth or his representative of his proportionate part of the amount so remaining, which included the proportionate part of Nelson's rent; that the money paid to said Wentworth was not the same as collected by the said Hayes as rent, but was by check of an oil company of which said Hayes was treasurer; that the said check so paid to the representative of said Wentworth was accepted and cashed; . . . that said Wentworth did at all times deny the existence of said lease under which the plaintiff claimed, did notify the plaintiff that he did not recognize said lease, and ordered him to vacate, and did bring ejectment proceedings to get the plaintiff out of the

said store and to secure possession himself, and did defend the bill in equity brought by the plaintiff to prevent him from interfering with the possession and occupancy of the said store."

The suit was heard by *Pierce*, J., by whose order there were, entered an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiff appealed from both decrees.

The case was submitted on briefs.

*J. F. Cavanagh & P. A. Hendrick*, for the plaintiff.

*S. E. Duffin & D. W. Murray*, for the defendants.

RUGG, C. J. The plaintiff in this suit in equity seeks to enjoin the defendants from interfering with his rights as alleged lessee of certain real estate. It has been established by *Nelson* v. *Katzman*, 243 Mass. 240, and *Nelson* v. *Wentworth*, 243 Mass. 377, that the lease of the plaintiff was given by one purporting to act as agent for two tenants in common, one of whom was an insane person under guardianship, that the guardian did not know of the lease prior to its execution and did not undertake to ratify or affirm it but distinctly repudiated it as soon as he knew of it, and that the defendant Wentworth later purchased the undivided part of the estate of the insane person and thereafter on due proceedings for partition the claimed leasehold of the plaintiff was set off with other property to the defendant Wentworth as his share, which thus became his absolute property free from the lease. The facts on which those decisions rested are set forth in the master's report in the case at bar.

The plaintiff now contends that on the facts found by the master the defendants' acts constitute ratification and approval of the lease and estoppel to deny its validity. So far as these are matters of fact the master has found against the plaintiff. Since the evidence is not reported and no exceptions were filed, the findings of fact made by the master must be accepted as final.

Knowledge of the lease executed by one who had no authority to bind the insane owner did not preclude the defendant Wentworth after his purchase from exercising all rights of his grantor. As successor in title he stood in a position as secure as that of his grantor. Sharing in the rents collected by the agent and by the receiver from this and other property under the circumstances here

disclosed does not as matter of law prevent the defendant from asserting his title. The facts in the master's report do not according to the principles of equity require a decree in favor of the plaintiff.

*Decree affirmed with costs.*